IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:18-CV-113-GCM-DCK

| | |
|---|---|
| KATHY R. DUGGER<br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL,<br>　Acting Commissioner of Social Security,<br><br>　　　　Defendant. | )<br>)<br>)　**MEMORANDUM AND**<br>)　**RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion for Summary Judgment" (Document No. 13-2) and the "Commissioner's Motion for Summary Judgment" (Document No. 16). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion for Summary Judgment" be <u>denied</u>; that "Commissioner's Motion for Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## BACKGROUND

Plaintiff Kathy R. Dugger ("Plaintiff" or "Dugger"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about June 4, 2014, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, <u>and</u> for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning August 31, 2012. (Transcript of the Record of Proceedings ("Tr.") pp. 15, 236–245, 247–251). The Commissioner of Social

Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on April 2, 2015, and again after reconsideration on June 4, 2015. (Tr. 15, 160, 166, 173, 177, 181, 186). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties.

(Tr. 173).

Plaintiff filed a timely written request for a hearing on July 8, 2015. (Tr. 15, 191–192). On April 27, 2017, Plaintiff appeared and testified at a hearing before Administrative Law Judge Clinton C. Hicks (the "ALJ"). (Tr. 15, 32–60). In addition, G. Roy Sumpter, a vocational expert ("VE"), and Stacey DeVeaux, Plaintiff's non-attorney representative, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on August 4, 2017, denying Plaintiff's claim. (Tr. 12–27). On August 14, 2017, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on May 14, 2018. (Tr. 1, 234). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on July 12, 2018. (Document No. 1). On August 6, 2018, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's original "Motion for Summary Judgment" (Document No. 10) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 11) were filed on

November 19, 2018. The undersigned issued a "Memorandum And Recommendation" (Document No. 12), also on November 19, 2018, recommending that Plaintiff's motion be denied without prejudice based on Plaintiff's failure to comply with the Local Rules of this Court. The undersigned noted:

> It appears to the undersigned that Plaintiff's Memorandum of Law does not comply with the Court's Local Rule 7.2, referenced in this case in the September 19, 2018 Scheduling Order. The "Social Security Briefing Order" specifically identifies the information Plaintiff's Memorandum Of Law shall provide and how it is to be organized. Id. The parties' compliance with this Local Rule is important to the Court's efficient and accurate determination of these cases.
>
> … Plaintiff shall file a renewed motion and memorandum on or before **December 4, 2018**, that fully complies with Local Rules 7.1(d) and 7.2.

(Document No. 12, pp. 1–2). The "Memorandum And Recommendation" (Document No. 12) was affirmed by text-only Order on January 14, 2019.

Plaintiff filed a new "Motion For Summary Judgment" (Document No. 13-2) and "Plaintiff's Revised Memorandum In Support Of Motion For Summary Judgment" (Document No. 13) on December 3, 2018. "Plaintiff's Revised Memorandum…" still fails to meet all the requirements of Local Rules 7.1(d) and 7.2. See (Document No. 13). Most notably, the "…Revised Memorandum…" does not "succinctly list the issues presented for review, separately identifying and enumerating each alleged error of the ALJ," and/or properly identify and set forth an "Argument" section.[1] See Local Rule 7.2(b)(4) and (5). Instead of again recommending denial

---

[1] Plaintiff's counsel's work is very familiar to this Court – the undersigned notes that these mistakes, as well as the style and format of the briefing in this case, are uncharacteristic of counsel's typical work product.

of Plaintiff's motion, as discussed below, the undersigned will attempt to construe Plaintiff's intended issue(s) and argument(s).

The "Commissioner's Motion For Summary Judgment" (Document No. 16) and "Memorandum Of Law In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 17) were filed February 19, 2019; and "Plaintiff's Response to the Commissioner's Motion for Summary Judgment" was filed March 12, 2019. (Document No. 21).

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

4

Case 5:18-cv-00113-GCM-DCK   Document 22   Filed 06/14/19   Page 4 of 16

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

**DISCUSSION**

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 31, 2012, and the date of his decision.[2] (Tr. 15). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

    (1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

    (2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of

---

[2] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

5

> impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i)–(v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 27).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since August 31, 2012, her alleged disability onset date. (Tr. 17). At the second step, the ALJ found that "depression, anxiety, panic attacks, and obesity" were severe impairments.[3] Id. At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 17–18). The ALJ opined that "the evidence fails to establish that any of these problems caused persistent limitations for at least 12 continuous months." Id.

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

6

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work, with the following limitations:

> [S]he should alternate between sitting and standing with the ability to change positions twice per hour. The claimant is precluded from climbing ropes, ladders and scaffolds, crouching or crawling. The claimant is limited to occasional climbing of ramps and stairs. The claimant is further limited to work involving no crisis situations and complex decision making and no production rate work. The claimant is limited to occasional interaction with supervisors/coworkers. She can stay on task for two hours at a time throughout the workday.

(Tr. 19). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform her past relevant work as a transportation driver or certified med tech. (Tr. 26, 330). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 26). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a storage facility rental clerk, a checker I, and a mail clerk. (Tr. 27). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 31, 2012, and the date of his decision, August 4, 2017. Id.

On appeal to this Court, Plaintiff's only alleged issue or error appears to be "Unexplained RFC." (Document No. 13, p. 9); see also Local Rule 7.2(b)(4)–(5). Plaintiff contends that the specific issue here is that:

7

> A claimant's RFC must reflect the limitations imposed by all her medically determinable impairments. In assessing Dugger's RFC, **the ALJ failed to properly explain the limitations included in the RFC resulting from her impairments**.

(Document No. 13, p. 9) (emphasis added).

**Plaintiff's RFC Limitations**

In support of her assertion that the ALJ failed to properly explain Plaintiff's limitations, Plaintiff first summarizes the medical opinion evidence. (Document No. 13, pp. 10–16). Plaintiff then briefly addresses the "standard of review," including the ALJ's RFC determination, and notes that the RFC "represents the most that an individual can do despite [her] limitations or restrictions." (Document No. 13, p. 16) (citing SSR 96-8p). Plaintiff further asserts that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and that the ALJ must explain his analysis and evaluation. (Document No. 13, p. 17) (citing Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), and Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 662 (4th Cir. 2017)). The crux of Plaintiff's argument seems to be that the ALJ failed to properly explain the limitations in the RFC (or lack thereof) in the context of the relevant medical opinions. (Document No. 13, p. 17).

    1.    <u>Environmental Irritants and Hazards</u>

Plaintiff suggests that the ALJ erred by affording "great weight" to the opinions of state agency non-examining sources who opined that Plaintiff was capable of light work—but then declining to include a limitation "to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards.[4] (Document No. 13, pp. 17–18) (citing (Tr. 25, 102, 135)). Plaintiff

---

[4] The ALJ actually "assigned **significant weight** to the opinions of the State Agency medical consultants and single decision makers." <u>See</u> (Tr. 25) (emphasis added) (citing (Tr. 92–106, 107–121, 124–137, 138–151)).

notes that the ALJ did not accommodate these limitations in the RFC, or explain their rejection; moreover, the ALJ did not question the VE about these limitations.  (Document No. 13, p. 18).

Defendant counters that the ALJ was not required to adopt every limitation opined by the state agency sources "because an ALJ is not required to rely on any medical opinions when determining RFC."  (Document No. 17, p. 4) (quoting Jackson v. Comm'r of Soc. Sec. Admin., no. CCB-13-2086, 2014 WL 1669105, at *2 (D.Md. April 24, 2014);  and citing Felton-Miller v. Astrue, 459 Fed. App'x 226, 230–31 (4th Cir. 2011)).  "The RFC is a legal decision rather than a medical one."  Id. (citing 20 C.F.R. §§ 404.1527(e);  404.1546, 416.927(e);  46.946).  Defendant contends that the ALJ "properly considered and weighed all medical opinions of record, together with the rest of the relevant evidence, to make the legal determination of an RFC that only includes limitations supported by the evidence.  Id. at 4–5.

In addition, Defendant argues that, even if the ALJ erred in omitting that limitation, the error was harmless.  Id.  None of the three occupations that the ALJ found Plaintiff could perform "involve the presence of any atmospheric conditions, moving mechanical parts, high exposed places, radiation, toxic caustic chemicals, or other environmental conditions."  Id. (citing (Tr. 26–27);  Storage Facility Rental Clerk, DICOT 295.367-026 (G.P.O.), 1991 WL 672594 (1991);  Checker I, DICOT 222.687-010 (G.P.O.), 1991 WL 672130 (1991);  Mail Clerk (non-postal), DICOT 209.687-026 (G.P.O), 1991 WL 671813 (1991)).  Defendant concludes there was no error or harm in not precluding Plaintiff from concentrated exposure to environmental irritants and hazards.

In reply, Plaintiff suggests that the ALJ's reliance on the DOT is error because he is not a vocational expert.  (Document No. 21, pp. 5–6).  Plaintiff also contends that the error here is not harmless.

9

The undersigned finds Defendant's arguments persuasive. The DOT clearly does not describe exposure to environmental hazards or irritants in any of the identified jobs. See 1991 WL 672594 (1991); 1991 WL 672130 (1991); and 1991 WL 671813 (1991). Moreover, Plaintiff fails to explain why this additional limitation needed to be included for Plaintiff. For example, Plaintiff does not allege that her severe impairments—"depression, anxiety, panic attacks, and obesity"— would be exacerbated by any particular environmental conditions.

### 2. Crisis Situations, Decision-Making, and Production

Next, Plaintiff notes that the ALJ's RFC determination "limited Dugger to no crisis situations, no complex decision-making, no production rates, and found she would have the ability to stay on task for two hours at a time." (Document No. 13, p. 18) (citing (Tr. 19)). Plaintiff acknowledges that the "ALJ summarized the evidence that he found credible, useful, and consistent," but argues he failed to *explain* why he included these limitations. Id. Plaintiff contends that none of the credited opinions support these limitations. (Document No. 13, p. 19).

In response, Defendant argues that "the ALJ evaluated the relevant evidence pertaining to Plaintiff's mental work-related abilities and limitations." (Document No. 17, p. 6). Defendant notes that the ALJ considered the following substantial evidence: (1) Plaintiff's treatment via medication through the Greater Hickory Cooperative Christian Ministries that adequately controlled her symptoms; (2) Plaintiff's treatment via medication for depression and anxiety through her primary care providers; (3) Plaintiff's denial of poor concentration, fatigue, poor sleep, and irritability; (4) Plaintiff's demonstrated normal and appropriate attention span, concentration, mood, affect, judgment, and insight; (5) Plaintiff's lack of any treatment from a mental health specialist; (6) Plaintiff's consultative examination in March of 2015, wherein Plaintiff was anxious and tearful, but otherwise demonstrated no abnormalities; and (7) multiple

10

medical sources that suggested Plaintiff would have difficulty with stress in the work environment. Id. at 6–7 (citing (Tr. 21–23) (citing (Tr. 104, 119, 362–369, 375–382, 392–400))).

Defendant concludes that the RFC reasonably translated the evidence of Plaintiff's depression and anxiety into mental limitations. In so concluding, Defendant also notes that "Plaintiff points to no evidence showing she was more limited." Id. at 7.

In reply, Plaintiff re-asserts that more explanation from the ALJ was necessary. (Document No. 21, p. 4). Plaintiff, however, does not argue that the limitations included in the RFC are inappropriate or inapplicable.

The undersigned again finds Defendant's arguments more persuasive. Notably, Plaintiff's memorandum explains that Christina Holley, MA, LPA ("Holley") diagnosed Dugger with "an unspecified depressive disorder with anxiety and opined that she would have mild **difficulty with complex instructions**, with sustaining attention for the purpose of simple, repetitive tasks, and with working with others," and "would have mild to moderate difficulty tolerating day-to-day stressors." (Document No. 13, pp. 3–4) (citing (Tr. 362, 368)) (emphasis added); see also (Document No. 13, pp. 11–12, 15). The ALJ explained that he assigned "great weight to the opinions of Ms. Holley because they are consistent with the objective findings of the examination as well as the objective evidence as a whole." (Tr. 25) (citing (Tr. 361–369)); see also (Tr. 22, 24).

Contrary to Plaintiff's assertion that none of the identified sources determined that she would have limitations to "no crisis situations, no complex decision-making, [and] no production rates," the undersigned finds that these limitations are consistent with at least Holley's evaluation, which the ALJ found was consistent with the opinions of Alice Maki, Ph.D. and Arne Newman, Ph.D. See (Document No. 13, pp. 13–15, 18–19); see also (Tr. 25) (citing (Tr. 94) ("mild difficulty understanding, retaining, and following complex verbal instructions and information")). The

undersigned finds that the "bridge" between the ALJ's narrative explanations of the weight he assigned certain opinions and evidence, and his RFC finding, is more than adequate.

3.   Interactions with Supervisors, Co-workers, and Public

Plaintiff also argues that the ALJ failed to explain why he did not limit Plaintiff's interactions with the public. (Document No. 13, p. 19). Plaintiff notes that the ALJ acknowledged Plaintiff's mild limitations in her ability to interact with others, but only limited Plaintiff's interactions with supervisors and co-workers when assessing her RFC. Id. at 20 (citing (Tr. 18–19) (citing (Tr. 361–369))); see also (Tr. 25) (citing (Tr. 94, 97) ("No difficulty to mild difficulty ability to relate to others (workers, supervisors, the public).")))).

Defendant argues that the omission of this limitation was a typographical error rectified in the substance of the decision. (Document No. 17, p. 7). Though the ALJ inadvertently omitted a limitation on interaction with the public from his written decision, he asked the VE about a limitation to "'[o]ccasional interaction with supervisors, coworkers, *and the public*'" in the relevant hypothetical question that served as the basis for the RFC. Id. (quoting (Tr. 52)) (emphasis added by Defendant). The VE based his recommendation on this limitation, despite its failure to appear in the final written decision. Id. at 7–8. Thus, Plaintiff cannot show that inclusion of the limitation in the written decision would have altered the outcome. Id. at 8.

The undersigned agrees with Defendant that the ALJ's omission was harmless, and most likely a scrivener's error. As noted above, the ALJ described a mild limitation in Plaintiff's ability to interact with others. Consequently, he explicitly limited Plaintiff's interactions with co-workers and supervisors in the written RFC and limited Plaintiff's interactions with the public in the relevant hypothetical question posed to the VE. See (Tr. 18, 52). Moreover, it appears that the

jobs identified by the VE are consistent with the ALJ's instructions and involve only occasional interaction with supervisors, co-workers, and the public.

### 4. Physical Limitations

Finally, Plaintiff argues that the ALJ's failure to explain why Plaintiff should have a sit/stand option precludes meaningful review. (Document No. 13, pp. 20–21). Plaintiff acknowledges that she is obese, and that this limitation "is more restrictive than those opined by Ms. Troutman and Dr. Guttler," but contends there is no evidence to support it. Id. at 21.

Again, Defendant argues that ALJs are not required to parrot any particular medical opinion and are free to find a greater limitation than found in medical exams if supported by additional evidence. (Document No. 17, p. 8). Here, the ALJ properly considered both Plaintiff's diagnosed obesity and her allegations of musculoskeletal pain to derive the sit-stand limitation. Id. (citing (Tr. 22–23)). Further, the ALJ considered Social Security regulations concerning obesity to supplement the medical assessments, writing "'[i]t is reasonable to conclude that the level of obesity as demonstrated in this case imposes some mechanical strain on weight bearing joints . . . and would exacerbate musculoskeletal pain.'" Id. (quoting (Tr. 23) (citing Evaluation of Obesity, 2002 WL 34686281 (S.S.A.))). The ALJ "reasonably accommodated Plaintiff's allegation that she cannot sit longer than an hour and has to move around" by tempering her subjective assessment with objective medical evidence that suggested she could remain seated or standing for longer. Id. (citing (Tr. 20)); see also (Tr. 43–45) (discussing difficulties sitting and standing); (Tr. 298) (Plaintiff cannot "sit, stand or walk too much at a time").

The undersigned agrees with Defendant that the ALJ supported his decision with sufficient evidence and built a logical bridge to his conclusion. The ALJ discussed at length both Plaintiff's alleged musculoskeletal pain and the effects of her diagnosed obesity. (Tr. 19–21, 23). The ALJ

13

reasoned that, while the objective medical evidence suggests that Plaintiff's pain is less severe than alleged and remediable, "it is reasonable to conclude that the level of obesity as demonstrated in this case imposes some mechanical strain on weight bearing joints." (Tr. 20–21, 23). The undersigned is persuaded that substantial evidence supports the ALJ's conclusion that Plaintiff's physical pain does not preclude all work, but does limit her ability to sit or stand for long periods of time.

**CONCLUSION**

The undersigned has carefully considered Plaintiff's argument(s), but is persuaded that any error here is harmless, and not sufficient cause for remand. The undersigned is satisfied that the ALJ's decision applies the correct legal standards and is supported by substantial evidence and that the ALJ's citations to, and explanation of, such evidence is more than adequate.

Plaintiff's summary of the medical opinions and evidence here was helpful. See (Document No. 13, pp. 10–15). The undersigned notes that Plaintiff's summary, along with the ALJ decision, indicates that the ALJ did consider the relevant medical opinions in determining Plaintiff's RFC. Id.; see also (Tr. 19–26). In fact, overall, the undersigned finds that the ALJ's RFC determination was *more* restrictive—imposing greater limitations—than those suggested by the medical opinions. (Tr. 19).

After careful review of Plaintiff's briefs, it is unclear whether Plaintiff is arguing that the RFC limitations are too restrictive, or not restrictive enough. (Document Nos. 13 and 21). Plaintiff does not appear to present arguments or evidence that the ALJ should have found greater limitations. Id.

The undersigned also observes that the ALJ determined that "the medical evidence of record supports that the claimant's mental health problems are controllable with medication and

14

Case 5:18-cv-00113-GCM-DCK   Document 22   Filed 06/14/19   Page 14 of 16

treatment" and that "the evidence demonstrates that the combined impact of claimant's other impairments with obesity would not preclude the performance of work at the level specified in the residual functional capacity finding." (Tr. 23).

Although not addressed by either party, the ALJ noted that Plaintiff received unemployment benefits for a period of time during which she contends she was totally disabled. (Tr. 24) (citing (Tr. 365)). The ALJ opined that Plaintiff's acceptance of unemployment benefits is inconsistent with her allegation of total disability during the same time period, and inconsistent with North Carolina law. Id. (citing N.C. Gen. Stat. § 96-13(a)(3)–(4)).

Based on Defendant's arguments and the record before the Court, the undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 13-2) be **DENIED**; the "Commissioner's Motion For Summary Judgment" (Document No. 16) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service

15

Case 5:18-cv-00113-GCM-DCK    Document 22    Filed 06/14/19    Page 15 of 16

of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315–16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147–48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: June 14, 2019

David C. Keesler
United States Magistrate Judge